IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD MULIEK KEARNEY**<br>**and MARC STEVEN DORCE,** | : | |
| | : | **Civil No. 1:13-CV-1892** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GARY HIBNER,** | : | |
| **CPL. CHARLES E. GLIECHMAN,** | : | |
| **CPL. WILLIAM D. BAKER,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendants** | : | |

# M E M O R A N D U M

In this Section 1983 civil rights action, Plaintiffs have sued several individuals asserting violations of their rights protected by the Fourth, Sixth, and Fourteenth Amendments.  Presently before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) (Doc. 29) and a motion for involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b) (Doc. 48), each filed by Defendants.  Because the court finds that the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiffs' claims, it concludes that the motion to dismiss may be granted.  Additionally, because the court finds that Plaintiffs have continually willfully disregarded court orders and the Federal Rules of Civil Procedure, it concludes that the motion for involuntary dismissal may be granted.

Although the court finds that dismissal may be warranted under either Rule 12(b)(1) and (6) or Rule 41(b), the court will address both motions for the sake of thoroughness and dismiss on the basis of Plaintiffs' failure to state a claim upon which relief can be granted.  Nevertheless, the fact that the court reaches disposition of Defendants' motion to dismiss should not be interpreted as condoning Plaintiffs'

repeated failures to comply with this court's orders despite being given ample time and instructions.

## I.         Motion For Involuntary Dismissal

As the court's disposition of the motion for involuntary dismissal depends heavily on the history of this action, the court will recite the pertinent procedural events before addressing the facts underlying the action.

### A.         Procedural History

Plaintiffs, state inmates acting pro se, initiated this action by filing a complaint on July 12, 2013, naming the following Defendants: Gary Hibner, a state police officer employed at the State Police Barracks in McConnellsburg, Pennsylvania; and Charles Gleichman and William Baker, both supervising corporals employed at the State Police Barracks in McConnellsburg, Pennsylvania. (Doc. 1, ¶¶ 5-7.)  Plaintiffs asserted their claims against each of the named Defendants in both their official and individual capacities.  (*Id*. at ¶ 8; Doc. 47, ¶ 1.)

Following several months of a cooperative effort by the court and the Clerk of Court to guide Plaintiffs' filings of the appropriate documents, the court granted Plaintiffs' motions for leave to proceed *in forma pauperis* and directed that a summons be prepared and issued on October 7, 2013 (Doc. 21).  Defendants timely waived service.  (Doc. 31.)

On November 22, 2013, Defendants filed a joint motion to dismiss for failure to state a claim upon which relief can be granted.  (Doc. 29.)  Plaintiff Kearney filed a motion for entry of default three days thereafter (Doc. 30), which the court denied by memorandum and order on December 2, 2013 (Docs. 35 & 36). That same day, Defendants filed a brief in support of their motion to dismiss.  (Doc.

34.)  Over the course of the next month, Plaintiff Kearney filed a plethora of papers, requesting that the court give him guidance, duplicate copies of filings, and grant him the ability to file an amended complaint.  (*See, e.g.*, Doc. 37, 38, 40 & 42.) Recognizing the difficulties facing a pro se plaintiff, the court provided direction to Plaintiffs regarding their options, instructing them that they may respond to the motion to dismiss or file a motion seeking leave to amend their complaint, and that the latter must include the proposed amended complaint as an attachment and must be signed by both parties.  (Docs. 39 & 41.)  Additionally, the court extended the deadline by which Plaintiffs could file their response and ordered that Plaintiffs' response be filed by January 12, 2014 (ten days after the Clerk of Court re-mailed Defendant's brief in support of their motion to dismiss).  (Doc. 39.)  On January 8, 2014, Plaintiff Kearney filed a motion seeking clarification of the court's previous order (Doc. 40), to which the court responded on January 9, 2014, restating Plaintiffs' options and again advising Plaintiffs of the requirement that all documents must be signed by both parties lest they be stricken for failure to comply with Rule 11 (Doc. 41).  Additionally, the court extended the deadline by which Plaintiffs could respond to the pending motion to dismiss or file a motion for leave to file an amended complaint to January 15, 2014.  (*Id.*)

Despite the court's leniency, Plaintiffs failed to respond to the motion to dismiss or file a motion for leave to file an amended complaint.  Rather, on January 28, 2014, nearly two weeks after the previous extended deadline had run, Plaintiff Kearney filed a motion requesting a stay of the proceedings due to extraordinary circumstances, in which he alleged that he had been placed – and remained – in a restricted housing unit and was unable to access the courts.  (Doc.

43.)  While expressing skepticism of Plaintiff Kearney's proffered reasons, the court granted in part the motion and extended the deadline by which Plaintiffs were to respond to February 14, 2014.  (Doc. 44.)  Significantly, the court again advised Plaintiffs that, pursuant to Local Rule 7.6, a party's failure to respond to a motion to dismiss shall be deemed not to oppose such a motion and indicated that Plaintiffs' continued failure to file an opposing brief indicates that Plaintiffs may have lost a genuine interest in prosecuting the lawsuit.  (*Id*).

Despite the court's continued leniency, on February 14, 2014, Plaintiff Kearney filed another motion for extension of time, wherein he again requested an extension of time due to his recently being transferred to the State Correctional Institution at Houtzdale.  (Doc. 45.)  The court, after again advising Plaintiff that the continued extensions demonstrate a lack of genuine interest in prosecuting the case and that no further extensions of time would be granted, granted in part the motion and extended the deadline by which Plaintiffs were required to respond to February 28, 2014.  (Doc. 46.)  On March 5, 2014, Plaintiff Kearney filed a document titled "Amended Complaint," which provided, in part, as follows:

1. Plaintiffs move to correct paragraph (8) eight of the Third Section of the original complaint titled "Defendants".  The original complaint paragraph (8) eight states: "Each defendant is sued individually and his official capacity", Plaintiffs seek to "correct and amend to reflect as follows: Each defendant is sued individually and in their "official" and as well as their "individual" capacity.  This complaint is AMENDED to reflect the correction.

2. Plaintiffs move to AMEND, the FIFTH SECTION, titled "LEGAL CLAIMS" of the original complaint to reflect as follows:

4

V.   LEGAL CLAIMS

3.   Plaintiffs reallege and incorporate by reference by
the original complaint paragraphs 1-24.

(Doc. 47.)  Despite being previously advised that the court's local rules require an amended complaint to be complete in and of itself, the proposed amended complaint as filed referenced and incorporated portions of the original complaint.  (*See id.*)  Thus, the amended complaint was inadequate and deserves to be stricken due to operation of Local Rule 15.1(a).  Moreover, and, in the court's view, more significantly, the amended complaint entirely disregarded the court's repeated forewarning that, because this was a multi-plaintiff action, any filings had to be filed by both plaintiffs.  (*See, e.g.*, Docs. 39 & 41 (citing Federal Rule of Civil Procedure 11 and stating that "[a] pleading that purports to be filed on behalf of more than one party must be signed by each party").)  Indeed, this amended pleading is entirely unsigned.  (Doc. 47, pp. 10-11 of 12.)  Lastly, the document is neither a motion for leave to amend nor a response to the motion to dismiss and, therefore, is unresponsive and inappropriate.

On March 6, 2014, Defendants filed a motion for involuntary dismissal pursuant to Federal Rule of Civil procedure 41(b), which was accompanied by a brief in support.  (Docs. 48 & 49.)  In the motion, Defendants highlight the inadequacies of this filing and argue that: (1) the amended complaint is unsigned despite unambiguous language from the court directing Plaintiffs that each filing must be signed by both plaintiffs; (2) the filing does not comply with court orders inasmuch as it is neither a motion to amend the complaint nor a response to Defendants' motion to dismiss; and (3) the filing is untimely.  (Doc. 48.)  On March

14, 2014, Plaintiff Kearney filed an opposition to Defendants' motion, which provides, in part, as follows:

1.  It appears that defendants had erroneously reviewed the record, and had asserted that Plaintiff Kearney and Dorce, who are Co-Plaintiffs in civil action <u>KEARNEY, et al,. [sic] V. HIBNER, et al., 1:13-cv-1892 (2013)</u>, due to an [sic] separation in [sic] January 2, 2014, as an [sic] result of Defendant's [sic] representatives informing <u>S.C.I. BENNER ADMINISTRATION,</u> of an order from Fulton County, which Fulton County "pro se" was not <u>enforcing themselves,</u> therefore, an [sic] reasonable inference could be drawn that "person(s)" other then [sic] than Fulton County who had an [sic] substantial "interest" in the separation of Co-Plaintiffs, had instigated the attention of <u>S.C.I. BENNER ADMINISTRATION,</u> to obtain the results that would follow which was the subsequent <u>separation of Plaintiffs,</u> in order to "handicap communications between Co-Plaintiffs."

*   *   *

3.  Plaintiff Kearney had exercise [sic] due diligence to obtain correspondence with Dorce since the separation of Co-Plaintiffs, which ultimately terminated communications between Co-Plaintiffs.

4.  Defendants assertion that Plaintiff <u>had not</u> complied with the deadline of February 28, 2014 is "erroneous" as any delay in this honorable court not receiving AMENDED COMPLAINTS, untimely is at no fault to Plaintiff, therefore the <u>PRISON MAILBOX RULE,</u> applies, and defendant's MOTION FOR INVOLUNTARY DISMISSAL <u>should be denied as "MOOT"</u> due to AMENDED COMPLAINTS being "TIMELY FILED".

6

(Doc. 50, ¶¶ 1, 3-4.)  Thus, a fair reading of Plaintiff Kearney's submission demonstrates that: (1) he confirms that he and Dorce are both plaintiffs in this action; (2) he confirms that Dorce did not sign the complaint; (3) he represents that communication between he and Plaintiff Dorce has been terminated; (4) he believes that his filing is timely by operation of the prison mailbox rule; and (5) he alleges that Defendants' conspired to prevent him and Plaintiff Dorce from communicating. (*See* Doc. 50.)  Such a reading is confirmed in Plaintiff Kearney's opposition, filed March 21, 2014.  (Doc. 53.)

## B.  Legal Standard 41(b)

Defendants move to involuntarily dismiss the complaint pursuant to Rule 41(b) on the basis of Plaintiffs' repeated noncompliance with the Federal Rules of Civil Procedure, this court's orders, and local rules of court.   Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  The rule authorizing dismissal for failure to prosecute is applicable at the pleading stage.  *See Ordnance Gauge Co. v. Jacquard Knitting Mach. Co.*, 265 F.2d 189, 194 (3d Cir. 1959).  When determining whether involuntary dismissal is appropriate, the court assesses the history of the case with the aid of the six factors enumerated in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). These factors are:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary. . . ; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

7

*Id.* at 868 (emphasis in original).  Whether to grant or deny a Rule 41(b) motion is in the informed discretion of the trial court.  *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642 (1976) (per curiam) ("The question . . . is not whether [the Supreme Court], or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.").

## C.   Discussion

Initially, the court highlights Plaintiffs' multiple failures.  First, Plaintiffs failed to comply with the January 9, 2014 order directing that they either respond to Defendants' motion to dismiss or file a motion for leave to file an amended complaint.  Instead, Plaintiffs filed an amended complaint that was neither authorized by the Federal Rules of Civil Procedure nor by this court.  Second, Plaintiffs failed to generally comply with requirements set forth in Local Rules and explained in multiple court orders, each of which instructed that any amended complaint, which was to be attached to the required motion for leave, must be complete in and of itself and not reference the former original complaint.  Instead, Plaintiffs' amended complaint referenced paragraphs in the original complaint and was, consequentially, not an adequate stand-alone pleading.  Third, in arguable mockery of the mandates of Rule 11 and the directions set forth by this court in its orders, the amended complaint is not signed by either Plaintiff Kearney or Plaintiff Dorce, a fact highlighted by Defendants in their motion that remains uncorrected.  *See* Fed. R. Civ. P. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to . . . the party's attention.").  It is with these failures in mind that the court considers the *Poulis* factors.

### 1.   <u>Personal Responsibility</u>

Despite Plaintiff Kearney's vague, baseless allegation of what can only be characterized as a conspiracy to separate Plaintiff Dorce and Plaintiff Kearney, Plaintiffs are personally responsible for the foregoing failures.  No one other than Plaintiffs, who are proceeding pro se, could be responsible for their refusal to comply with this court's orders.  Plaintiffs have requested, and the court has provided, clarification regarding their options and requirements of the court orders and applicable rules.  Similar to previous occasions, when Plaintiff Kearney was allegedly unable to comply with the deadlines due to his placement in the restrictive housing unit and subsequent transference of institutions, it was Plaintiffs' personal responsibility to comply with the court's more-than-adequate directions.  They alone failed to do so.  Moreover, this is not a case where Plaintiff Dorce's lack of signature is the only shortcoming attributable to Plaintiffs.  Accordingly, this factor weighs in favor of dismissal.[1]

---

[1]   The document filed by Plaintiff Kearney titled "Notification of S.C.I. Houtzdale Process in Obtaining Clearance for Inmate Correspondence Between Plaintiffs" (Doc. 51) does not lift the responsibility off Plaintiffs' shoulders.  In the three-paragraph document, Plaintiff Kearney acknowledges the requirements of Rule 11 and attempts to  justify his failure to comply with the Rule.  In support thereof, Plaintiff Kearney attaches an inmate request, dated February 27, 2014, in which he requested permission to correspond with Plaintiff Dorce.  This document is unpersuasive.  Plaintiff Kearney was first put on notice that any paper filed must be signed by both plaintiffs in the court's January 2, 2013 order. (*See* Doc. 39.)  Nevertheless, Plaintiff Kearney evidently waited until February 27, 2014, one day prior to the date Plaintiffs' response was due, to request to correspond with Plaintiff Dorce, which he knew he was prohibited from doing.  Neither the rules nor case law excuse this delay.  Indeed, despite the favorable treatment the courts lend to pro se prisoner litigants, it is unreasonable to imagine that clearance to communicate be given overnight and in time for Plaintiffs to comply with Rule 11.  Litigants are required to abide by rules of court.  While the court will pardon failures to do so made in good faith, it will not excuse a lack of diligence.

Moreover, and significantly, as stated, the amended complaint was not signed by *either* party.  Certainly Plaintiff Kearney cannot blame this noncompliance on his inability to communicate with Plaintiff Dorce.  Additionally, the court notes the amended complaint is dated February 26, 2014, the day before Plaintiff Kearney made his inmate request.  Thus, the court is convinced Plaintiff

(continued...)

### 2.      <u>Prejudice to Adverse Party</u>

Defendants have suffered minimal prejudice due to Plaintiffs' failures to comply with the court rules and orders.  Evidence of prejudice to an adversary "bear[s] substantial weight in support of a dismissal." *Adams v. Trustees of N.J. Brewery Emps. Trust Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Id* at 874.  In the present case, Defendants argue that they have been prejudiced because "their motion to dismiss has yet to be ruled upon because of [P]laintiffs' repeated requests for enlargements of time culminating with a filing which neither complies with the court's order nor responds to the motion to dismiss."  (Doc. 49, p. 4 of 7.)  This alone, however, does not demonstrate that they suffered prejudice of the type that alone warrants involuntary dismissal. While the court finds that Defendants have suffered prejudice to some extent, inasmuch as they have been required to remain in a meritless lawsuit and have not been afforded the opportunity to have their motion to dismiss be addressed on the merits, the Third Circuit has recognized that "there are varying degrees of prejudice, and courts should consider the degree of prejudice that the defendant suffered." *Briscoe v. Klaus*, 538 F.3d 252, 260 n.3 (3d Cir. 2008).

Here, the prejudice suffered by Defendants is minimal.  Indeed, although Defendants' motion has been pending for over 120 days, Defendants have not expended additional resources due to Plaintiffs' requests to extend deadlines, as

---

(...continued)
Kearney's February 27, 2014 document is evidence of a post hoc attempt to again be excused for his lack of diligence rather than of a good faith effort to comply with this court's directions.

Defendants have not been required to respond to any motion filed by Plaintiffs since the filing of their motion to dismiss. Accordingly, while the court recognizes the value of closure and that Defendants have suffered some prejudice, the court cannot conclude that this is the type of prejudice that weighs heavily in favor of dismissal. Thus, while this factor certainly does not weigh in favor of Plaintiffs, the court ultimately concludes that this factor is neutral.

### 3.      History of Dilatoriness

The record unquestionably demonstrates Plaintiffs' history of dilatoriness. Conduct that occurs one or two times is insufficient to demonstrate a "history of dilatoriness." *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984). However, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness." *Adams*, 29 F.3d at 874; *see also Emerson v. Thiell Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (finding that a history of dilatory conduct existed because the "procedural history of this case reflects continuous dilatoriness" as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines). The court must evaluate "a party's problematic acts . . . in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875.

As demonstrated in the court's recitation of the procedural history, Plaintiffs have dodged the court's consideration of the motion to dismiss for several months. Plaintiff Kearney has frequently waited until the day before the response was due to send to the court an unresponsive document and has continually received the benefit of the rules favorable to pro se prisoner litigants. The court concludes, without hesitancy, that a history of dilatoriness exists and that it weighs heavily in favor of dismissal.

### 4.      Willfulness of Plaintiffs' Failures

The court concludes Plaintiffs' failures are willful.  Under this factor, the court considers whether the conduct was the "type of willful . . . behavior which was characterized as 'flagrant bad faith.'" *Adams*, 29 F.3d at 875.  Generally, "[w]illfulness involves intentional or self-serving behavior." *Id*.  If the conduct is merely negligent or inadvertent, it does not qualify as contumacious.  *See Poulis*, 747 F.2d at 868-69 (finding that the plaintiff's counsel's behavior was not willfully disobedient because, although he had missed deadlines, there was no suggestion that his delays were for any reason other than his and his wife's poor health).  *But see Emerson*, 296 F.3d at 191 (finding willfulness because the conduct went beyond mere negligence).

Defendants argue that, because of the unambiguous nature of the court's directions, it can only be assumed that Plaintiffs' non-compliance is willful.  The court is inclined to agree.  The court continually explained Plaintiffs' options to respond to the motion to dismiss and the requirements to do so.  Plaintiffs cannot genuinely argue that their noncompliance was justifiable or in good faith.  Regardless of Plaintiffs' pro se status, every litigant must abide by the law and the rules, at least to the best of their ability.  If Plaintiff Dorce's failure to sign the amended complaint was the only shortcoming, the court may reach a different conclusion regarding whether these errors were willful.  However, this is clearly not the case.  As stated, the March 5, 2014 filing is an inappropriate document considering the procedural posture of the case and is, moreover, an insufficient amended complaint even if the court was to accept that type of document as it is unsigned and incorporating the original complaint.  Plaintiff Kearney has continually

demonstrated his forethought by requesting that the court refrain from considering Defendants' motion to dismiss at the eleventh hour. This course of conduct must no longer be sanctioned. Thus, the court agrees that Plaintiffs' failure to comply was willful and concludes that this factor weighs in favor of dismissal.

### 5. Alternative Sanctions

Before dismissing a case with prejudice, a district court should consider alternative sanctions. *Poulis*, 747 F.2d at 869. Defendants argue that there are no effective alternative sanctions because Plaintiffs were granted *in forma pauperis* status. (Doc. 49, p. 5 of 7.) The court agrees with respect to the effectiveness of the alternative sanctions cited by Defendants but ultimately concludes that alternative sanctions are available. As stated, Plaintiffs are proceeding both pro se and *in forma pauperis*. Because they are proceeding pro se, they have no attorney upon whom the court can impose the expenses for failing to comply with the court's orders. Moreover, both the fact that they are proceeding *in forma pauperis* and that they are currently incarcerated indicates that they would be unable to pay monetary sanctions. *See Briscoe*, 538 F.3d at 262-63. Nevertheless, the court is aware of the Third Circuit's suggestion that an alternative sanction may take the form of barring the filing of any response to the motion to dismiss and adjudicating the motion to dismiss on the merits. *See Hudson v. Coxon*, 149 F. App'x 118, 120 (3d Cir. 2005).[2] That is the type of sanction that effectively will be imposed here. The court concludes, after considering alternative sanctions in light of Plaintiffs' repeated failures despite the court's repeated warnings, that dismissal of the action following

---

[2] Unlike the plaintiff in *Hudson*, Plaintiffs were warned that failure to adhere to rules of court would result in the striking of documents and that the failure to respond would result in dismissal of the matter without a merits analysis. Thus, Plaintiffs were on notice.

a merits analysis would be more effective and in accordance with the court's preference of disposing of claims on the merits. Thus, the factor weighs in favor of a merits analysis rather than involuntary dismissal.

### 6.      Meritorious

Following an assessment of the merits of the action, the court concludes that Plaintiffs' claims are not meritorious. Generally, in determining whether a plaintiff's claim is meritorious, the court employs the familiar 12(b)(6) motion to dismiss for failure to state a claim standard. *Briscoe*, 538 F.3d at 263 (citing *Poulis*, 747 F.2d at 869-70). Thus, a claim or defense is deemed meritorious "when the allegations of the pleadings, if established at trial, would support recovery by [the] plaintiff or would constitute a complete defense." *Id.* at 263 (citing *Poulis*, 747 F.2d 870). However, whether the claim is meritorious is not determinative of a motion for involuntary dismissal. *Hudson*, 149 F. App'x at 120 n.2 ("We have never held that *Poulis'* sixth factor is determinative. To do so would confuse Rule 12(b)(6) with Rule 41(b), which we refuse to do."). For the reasons set forth in Part II.C.2, *infra*, the court finds that the complaint lacks merit. Accordingly, this factor weighs in favor of dismissal.

### D.      Conclusion

With regard to Defendants' motion for involuntary dismissal pursuant to Rule 41(b), the court concludes, after an analysis of the factors set forth in *Poulis*, that Plaintiffs had the personal responsibility of prosecuting their case and complying with this court's orders, that their failures to comply with this court's

orders slightly prejudiced Defendants, that Plaintiffs had a significant history of dilatoriness, that Plaintiffs' noncompliance was willful, that alternative sanctions to involuntarily dismissal pursuant to Rule 41(b) are available, and that Plaintiffs' claim is without merit.  The court makes these finding based on its assessment that Plaintiffs not only utterly failed to comply with court orders but, as is obvious from the court's recitation of the procedural history, was afforded a plethora of chances to remedy their shortcomings and never chose to properly do so.  Nevertheless, although the court cannot stress enough that it does not condone Plaintiffs' arguably contumacious conduct, it will provide a merits analysis pursuant to Rule 12(b)(6) and dismiss Plaintiffs' complaint on that basis rather than as a sanction.

## II.            Motion To Dismiss

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Thus, for the purposes of the motion *sub judice*, the court only considers the allegations contained in the complaint and exhibits submitted in support thereof (Doc. 1; Doc. 47) and will accept as true all well-pleaded factual allegations contained in Plaintiffs' pleading. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  Due to Plaintiffs' pro se status and in light of the very accommodating nature of the court, the court will turn to the properly pleaded portions of Plaintiffs' amended complaint where needed, despite the fact that the document is not accepted by the court for Plaintiffs' failure to conform to the Federal Rules of Civil Procedure, Local Rules of Court, and unambiguous instructions set forth in prior orders.

A.   **Facts**

Plaintiffs' constitutional claims involve the legal processes which led to their convictions in the Franklin County Court of Common Pleas for several weapons offenses, criminal coercion, unlawful restraint, false imprisonment, simple assault, recklessly endangering another person, indecent assault, and harassment, all arising from their actions on June 30, 2011.  Plaintiffs allege that their identification, arrest, prosecution, detention, and conviction were illegal, not based upon probable cause, and in violation of their constitutional rights.  Specifically, Plaintiffs allege that Defendant Hibner included their names in his affidavit of probable cause, despite the failure of Tabitha Mellott ("Mellott"), a victim of the crimes for which Plaintiffs were convicted, to identify Plaintiffs by name during her interview with Defendant Hibner.  (*See* Doc. 1, ¶¶ 11-13, 15.)  Plaintiffs contend that Defendant Hibner's affidavit of probable cause was made with a "reckless disregard for the truth and [was] at worst, outright false."  (*Id.* at ¶ 25; Doc. 47, ¶¶ 7-8.)  Plaintiffs further allege that the photograph lineup presented to Mellott, allegedly by Defendant Baker, was unduly suggestive and was conducted without notice to their defense counsel.  (Doc. 1, ¶¶ 20-23; Doc. 47, ¶ 19.)  Plaintiffs included Defendants Baker and Gleichman as defendants in the action, arguing that they are liable due to their supervisory positions.  (Doc. 1, ¶¶ 17, 19.)  As relief for these and other alleged constitutional violations, Plaintiffs seek compensatory damages, punitive damages, and costs associated with expungement.   (*Id.* at ¶¶ 34-35, 37.)

B.   **Legal Standards**

1.    **Pro Se Pleadings**

16

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Under the liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant, especially when the complainant is a pro se litigant.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  Although it leaves much to be desired, the instant complaint is relatively clear and concise considering that it was drafted by pro se litigants.  Nevertheless, even liberally construing the factual averments contained therein, the complaint cannot withstand Defendants' motion to dismiss.

## 2.       **Failure To State a Claim**

Defendants' motion challenges Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  While a complaint need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Thus, when adjudicating a motion to dismiss for failure to state a claim, the court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all reasonable

inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).  However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (directing that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Iqbal*, 556 U.S. at 679.  "The plausibility standard requires 'more than a sheer possibility' that a defendant is liable for the alleged misconduct." *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

To evaluate whether allegations in a complaint survive a Rule 12(b)(6) motion, the district court must initially "take note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  Next, the court should identify allegations that "are no more than

conclusions" and thus "not entitled to the assumption of truth." *Id.* Lastly, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

"A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 588 n.8). Rather, Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Id.* at 234.

Plaintiffs attached pages of exhibits to their pleading. The use of these exhibits by the court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. *Pryor v. National Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("[C]ertain matters outside the body of the complaint itself, such as exhibits attached to the complaints and facts of which the court will take judicial notice, will not trigger the conversion of [a Rule] 12(b)(6) motion to dismiss to [a Rule] 56 motion for summary judgment.").

## C.   <u>Discussion</u>

The court interprets Plaintiffs' complaint as asserting a Section 1983 claim for false arrest/false imprisonment. Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To establish a claim under this section, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiffs claim that Defendant Hibner violated their Fourth Amendment right to be free from unreasonable seizures, which includes the right to be free from false arrest and false imprisonment. An arresting officer violates a person's Fourth Amendment rights when the officer arrests a person without probable cause. *See Hanks v. County of Delaware*, 518 F. Supp. 2d 642, 648 (E.D. Pa. 2007) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)); *see also Pierson v. Ray*, 386 U.S. 547, 556-57 (1967) (acknowledging that a plaintiff may recover civil damages for false arrest under Section 1983 if the plaintiff is able to establish the arresting officers lacked good faith and probable cause). When an officer does make an arrest without probable cause, the arrestee may also assert a

Section 1983 false imprisonment claim based on any subsequent detention resulting from that arrest. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).[3] Probable cause exists when the facts and circumstances within an arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Id.* at 634.

## 1.   **Favorable Termination Requirement**

Defendants argue this action should be dismissed in accordance with *Heck v. Humphrey*, 512 U.S. 477 (1994). The court agrees. In *Heck*, the Supreme Court held that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to [Section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction of confinement." *Id.* at 486.

The essence of Plaintiffs' federal claims against Defendant Hibner in this case is that the events underlying the state criminal charges against them "did not happen" and that the affidavit of probable cause submitted for their arrests contained falsehoods. However, Plaintiffs admit, and the public records confirm, that they were convicted of the offenses with which they were charged in relation to their actions on June 30, 2011. The favorable termination rule of *Heck v. Humphrey* applies because Plaintiffs' federal lawsuit necessarily calls into question the validity

---

[3] A Section 1983 false imprisonment claim arising from an arrest without probable cause is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Groman*, 47 F.3d at 636. The law of the state where the arrest occurs controls whether the arrest is valid. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Ker v. California*, 374 U.S. 23, 37 (1963)). A claim for false arrest under Pennsylvania law is coextensive with one made under Section 1983. *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592-93 (M.D. Pa. 2008). To state a claim for false imprisonment, a plaintiff must establish that he was detained and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012).

of their convictions.  Plaintiffs' convictions or sentences have not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.  *See Heck*, 512 U.S. at 487.  Accordingly, the court will dismiss Plaintiffs' claims insofar as the complaint challenges Defendant Hibner's conduct during the investigation and prosecution of the crimes for which Plaintiffs were convicted.

Moreover, it is well established that the use of unreliable identification evidence obtained by police through unnecessarily suggestive procedures violates a defendant's right to due process.  *Neil v. Biggers*, 409 U.S. 188, 199 (1972).  However, because judgment in favor of Plaintiffs on a claim arising from an allegedly tainted lineup would imply the invalidity of their convictions, Plaintiffs' claims related to the improper identification procedure are barred by *Heck*.  Accordingly, the court will dismiss Plaintiffs' claims insofar as the complaint challenges the actions of Defendants Hibner and Baker regarding their use of unnecessarily suggestive procedures in the course of their investigation.

Despite the court's exclusion of the amended complaint for failure to conform, *see supra* Part I.C, the court will address Plaintiffs' argument contained therein to the extent that it can be interpreted as raising an argument in response to the motion to dismiss.  In the amended complaint, Plaintiffs set forth conclusory allegations that *Heck*'s favorable termination requirement is inapplicable because of "the exceptions to perjury, fraud, and mistake of law."  (Doc. 47, ¶ 11 (emphasis omitted).)  Plaintiffs reason that the "false averments made by Hibner under oath satisfies the required element of 18 Pa. Cons. Stat. § 4903 false swearing, which

affirmatively falls within the provisions of §4902 Perjury." (*Id.* (emphasis omitted).) Accordingly, Plaintiffs argue that *Heck* is inapplicable.  The court disagrees.

The essence of Plaintiffs' claims is that the fabrication of false criminal charges against them based on constitutionally infirm practices amounted to an unconstitutional conviction and imprisonment.  Because success in establishing that Defendants falsely convicted Plaintiffs, by allegedly lying during the course of the criminal proceedings, committing perjury, and withholding exculpatory evidence, would necessarily render Plaintiffs' convictions or sentences invalid, *Hecks*'s reasoning renders Plaintiffs' claims non-cognizable absent an invalidation of those convictions.  *See Platts v. Buchanan*, Civ. No. 12-cv-1788, 2013 WL 4810486, *6 (W.D. Pa. Sept. 9, 2013) (citing *Abella v. Rubino*, 63 F.3d 1063, 1064-65 (11th Cir. 1995) (holding that the plaintiff's argument that the defendants "knowingly and willfully . . . convict[ed] him falsely by fabricating testimony and other evidence against him" was barred under *Heck* because "[j]udgment in favor of Abella on these claims 'would necessarily imply the invalidity of his conviction'"); *Zhai v. Cedar Grove Mun.*, 183 F. App'x 253, 255 (3d Cir. 2006) ("[The plaintiff's civil rights claims] are based on her allegation that the officers, prosecutor, and judge conspired to bring false charges to secure a release for any civil liability resulting from the incident.  However, these claims are barred, along with her challenges to the guilty plea itself, by *Heck v. Humphrey*"); *Perez v. Sifel*, 57 F.3d 503 (7th Cir. 1995) (per curiam) ([holding that] *Heck* barred Section 1983 action charging conspiracy to procure conviction through perjury, falsifying evidence, and withholding exculpatory evidence)).  Because Plaintiffs' conclusory allegations of perjury continue to undermine the validity of their convictions, which have not been

reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus, the claims remain barred by *Heck*.  Accordingly, Plaintiffs' claims against Defendant Hibner will be dismissed.

**2.    Supervisor Liability**

Additionally, Plaintiffs name Supervising Corporals Baker and Gleichman as defendants on the basis of these individuals' supervisory authority. Defendants contend that the facts alleged do not establish liability as to Defendants Gleichman and Baker.  For the following reasons, the court agrees with Defendants, and the claims predicated on Defendants Gleichman and Baker's supervisory status will be dismissed from the action.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.  *See Santiago*, 629 F.3d at 128-29; *Iqbal*, 556 U.S. at 693 ("[E]ach Government official . . . is only liable for his or her own misconduct").  Accordingly, liability under Section 1983 may only be based on a defendant's personal involvement amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). "Liability may not be imposed under Section 1983 on the principle of respondeat superior."  *Hetzel v. Swartz*, 909 F. Supp. 261, 264 (M.D. Pa. 1995) (citing *Hampton*, 546 F.2d at 1082). Therefore, to survive a Rule 12(b)(6) motion, the complaint must contain averments establishing each defendant's involvement in the conduct that caused a violation of Plaintiff's constitutional rights.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Applicable to the matter *sub*

24

*judice*, "a supervisor may be personally liable . . . if he or she . . . , as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago*, 629 F.3d at 129 (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Plaintiffs have not alleged facts in their complaint from which it can reasonably be inferred that Defendants Baker and Gleichman's personal conduct violated their constitutional rights. Because the complaint does not allege facts sufficient to show that Plaintiffs have a "plausible claim for relief" for a Section 1983 claim against Defendants Baker and Gleichman on the basis of their personal involvement, any claim asserted against Defendant Baker and Gleichman on the basis of their personal involvement will be dismissed. Additionally, Plaintiffs' claims must fail to the extent that they attempt to assert claims against Defendants Baker and Gleichman for supervisor liability, *i.e.*, that they had knowledge of and acquiesced in Defendant Hibner's alleged violations of Plaintiffs' constitutional rights. As discussed *supra*, Part II.C.1, Plaintiffs cannot maintain an action where the success of that action would implicitly require the invalidation of Plaintiffs' criminal convictions. Thus, any claim that Defendants Baker and Gleichman knew of and acquiesced in Defendant Hibner's violations of Plaintiffs' constitutional rights necessarily includes as an element an actual violation at the hands of these supervisors' subordinates. Because such a violation cannot be shown, Plaintiffs cannot maintain an action on the basis of supervisory liability.

### D.   Conclusion

Based on the foregoing, the court finds that a ruling in favor of Plaintiffs in this Section 1983 civil rights litigation would necessarily require the

invalidation of Plaintiffs' convictions, which remain valid at this time.  Thus, such claims are not cognizable due to the favorable termination requirement set forth in *Heck v. Humphrey*, 512 U.S. 477.  Accordingly, the court concludes that Plaintiffs' complaint fails to state a claim upon which relief can be granted.  Plaintiffs' complaint will be dismissed in its entirety.

## III.        Conclusion

The court concludes that Plaintiffs' complaint may be dismissed pursuant to Federal Rules of Civil Procedure 12(b) or 41(b).  With regard to Defendants' motion for involuntary dismissal, the court finds that Plaintiffs' conduct, in the face of this court's leniency and accommodating decisions with regard to enlargements of time and explanatory orders, demonstrates a genuine failure to prosecute the case and a willful disregard for this court's orders and rules of court and procedure.  However, because Defendants have not been significantly prejudiced and because, based on the court's merits analysis pursuant to the pending motion to dismiss, alternative sanctions are available, the court declines to dismiss the lawsuit simply as a sanction.  With regard to Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, the court finds that Plaintiffs' claims implicitly challenge the legitimacy of their convictions.  Because it is undisputed that Plaintiffs cannot prove that the convictions or sentences have been overturned or otherwise invalidated by the state or federal courts, Plaintiffs' claims are not cognizable at this time.  Accordingly, the court concludes that the favorable termination requirement bars Plaintiffs' claims that attack the constitutionality of the underlying convictions.  For these reasons, the court will grant Defendants' motion

to dismiss for failure to state a claim upon which relief can be granted, and will dismiss the complaint in its entirety.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  March 25, 2014.